First case for argument is United States v. Donald Shaw. Thank you. May it please the Court. My name is... Ms. Zipfel. Your Honor, my name is Stephanie Zipfel, Assistant Federal Public Defender, and I represent the appellant, Mr. Donald Shaw. The District Court erred in this case by admitting and relying on inadmissible and unreliable hearsay evidence, a text message referencing a firearm in violation of Mr. Shaw's Fifth Amendment right to due process and his Sixth Amendment right to confront adverse witnesses. This unreliable hearsay... Now, opposing counsel, of course, argues that it wasn't used for the revocation determination. It was used in the sentencing. This is a revocation sentence. Yes, Your Honor. Where the evidentiary rules are considerably different. Your Honor... Why is that argument wrong? Your Honor, and we do concede that had the court used the hearsay evidence in the sentencing portion of the proceedings, that that would have been perfectly okay. The problem is that we believe that this was presented and admitted during the actual revocation hearing itself, and the court, during its pronouncement of revocation, said that the text message referencing a firearm was, quote, certainly a factor in its decision to revoke Mr. Shaw's supervised release. So I think that the record does dispute that this was considered only for sentencing purposes, which, again, we concede would have been allowable. And we believe, again, that this would have impacted the court differently had it been admitted in that way. Now, what's our stand or review on that assertion? You're just saying read the record and establishes that the court did something other than what it could have done. Your Honor, where the defendant, as in this case, objected to the admission of the hearsay evidence that it violated his rights to due process and confrontation, the court reviews de novo. Yes, but whether the court used it for sentencing versus revocation, when the court did not say that it was the basis for the revocation, obviously it was going to revoke anyway. How many admitted grade C violations? Absolutely, Your Honor. And it rejected the grade A, right? It did. The court stated that it was declining to revoke, quote, around issues surrounding the assault, end quote, but immediately followed that with that the text message referencing the firearm was, quote, certainly a factor in its basis to revoke Mr. Shaw's supervised release. But the revocation includes the revocation sentence. I think there should be a presumption that the district court knew what it was doing. Of course. And therefore, our review is not de novo, and it may not even be reviewable at all if it wasn't raised to the court at the time. Your Honor, we believe that even if the court does not review it de novo, that this was plain error because it did substantially affect Mr. Shaw's rights. It's only plain error if it's used for the wrong purpose. Well, Your Honor, I think that's supported by our ---- It's like admitting a 404B and then the lawyer comes up and says, well, we can tell from the record that it was used for propensity. And, again, I think we're looking at all of the factors here. We had a lengthy two-day revocation hearing. The court was prejudiced by this information, and we think that, again, that the court would have ruled differently. Would have been prejudiced for what purpose? Because this was unreliable hearsay evidence, Your Honor. And, again ---- Not for sentencing. You've just conceded that. Yes, it would have been admissible, we believe, at sentencing for those purposes. However, the outcome would have been different. I understand your position. And, again, I think that ---- Just to follow up on that, but you're conceding, then, that if the district court used it to vary upward, for example, here, that that does not present a problem. Only if they used it to actually revoke does it present a problem. We do, however, I think that to support the issue that they used it to revoke is the second point in my brief, which is that the court did not even do the applicable C-grade guideline range. It just went straight into the sentencing proceeding. Well, there's an easy answer to that, too, which the government provides. And I understand that Mr. Shaw had had a previous supervisor. So there's no spillover, in my view. Well, and, again, though, that procedure, that safeguard exists that we do that in every case so that the court does take pause and does do the applicable guideline range, and that was not done here. The record was not made. Wait, wait, wait. You just threw out a categorical that I don't think the case law would support. Here, it was conceded by everybody at the immediately preceding revocation hearing that for grade C violations for this defendant, the range was X. Not in this matter, Your Honor. For this defendant, for this series of 17 violations, the prior umpteen that were revoked, the range was agreed to be 14 to 18, right? That would occur over a year before this event, I believe, Your Honor. Yeah. Well, he needs time to commit 17. So it took him 18 months instead of six. I mean, why does the judge have to state the obvious? Give me a case, give me a sentencing revocation case where we've said that. Your Honor, I don't believe I have a specific sentencing revocation case, but I think the U.S. Supreme Court has said specifically that the guideline range must be calculated, and if it's not and it affects the defendant's substantial rights. You're assuming it wasn't calculated. It was. It was not calculated in this revocation hearing, Your Honor. Oh, so we have to have, did you say, Judge, we haven't had our discussion about whether it's 14 to 18 again? Your Honor, that was not. I say you, I don't know who was saying. It was me, so I can say that, no, that was not brought up. But again, I think the case law does make it clear. You're leading the trial judge into error, which I was warned when I was a law clerk never to do. No, Your Honor. Again, I think that because this was the end, again, of a two-day lengthy revocation hearing itself, the court, the motions were high. The court was distracted by hearing the unreliable hearsay over the course of two days and moved straight into a sentencing proceeding without stopping to do the proper procedural safeguards that we have. Was it in the PSR, the guidelines range? The guideline range for the revocation would not have been in the PSR, no. Okay. That's a separate sentencing. Was it in the probation officer summary? No, Your Honor, the grade A guideline range was in the supervised release sentencing computation because, again, that's what the government was proceeding on. And just to be clear, because I don't know that I got an answer to my first question, if we conclude that it wasn't used for the revocation itself but was used only for the upward variance, and I know that gets into your second question, that would tend to be okay, but you would argue that that affects substantial rights. Absolutely. Okay, I just want to be clear about the argument. Yes, Your Honor, yes. I am conceding that had this been used only for sentencing, then that would have been different. But, again, that's not what happened here. And so we do think that because then the guideline range wasn't applied that the statutory maximum sentence wouldn't have been imposed. Well, okay, so I have a follow-up question to this. So I tend to agree with you that it's not in the record, at least the immediate record, the guidelines range. What is the application of Molina-Martinez? I think that's a really important case where the court says, and it's a miscalculation case, it's not a no-calculation case, where the court says that's all the evidence you need, you don't have to present anything additional. Yes, Your Honor, and I think that, again, yes, that case states that if it does affect the substantial rights, then there is a reasonable probability that the sentencing would have been different, which is our position in this case. But apply that because that's a miscalculation case, this is a no-calculation case, and I wonder how that's different. This is even more egregious, because the guidelines weren't even calculated at all. Although then there's Judge Loken's point that everyone sort of knew it at least from a year or two before, so maybe we, I mean, I'm just, I'm playing devil's advocate here. Yes, Your Honor, and I would push back on that, that I don't think that this court was aware that over a year ago that was the guideline calculation. And again, even if the court, in their experience, knows what a C-grade violation is on a criminal history 6, because he's heard these many times, that doesn't mean that he applied it in this case, took the time to look at the guidelines and the sentencing factors in this case. That's not preserved. That's not even plain error review. That's just not preserving. If you didn't tell a judge, I don't think the record is clear how you've determined this revocation, this sentencing range, and what's your... I think that it is plain error, Your Honor, and I think that's what the Molina-Martinez case... I've written more than once it's more than plain error when you sandbag a district judge like this. And, Your Honor, our position is that this was not sandbagging the district judge. Again, this was a lengthy hearing that at the end the court did use this hearsay evidence to revoke Mr. Shaw... Your interpretation. Based on the record. You could have said, Your Honor, what are you using the hearsay evidence for? Your Honor, I think the court was clear when it said it was certainly a factor in its decision to revoke. Yes, but the decision to revoke includes the sentence imposed. That was before they moved into sentencing, and I apologize... The judge has come in with a task to do, which includes the sentence. And the fact that the lawyers, you know, we want to proceed A, B, C, D, and the judge, okay, and then at the end there's an answer. I understand, Your Honor. But if it's not clear, if the appellate record is not going to be clear on these kinds of things, it's the lawyer's obligation, in my view of the world, which is certainly not unanimous, that the lawyer has an obligation to tell a judge problems that the lawyer perceives that are likely to be or may well be appealable issues. Your Honor, and I see my time is up. If I can briefly make a closing remark. Could I ask one more question? Is there an argument here, this is the one thing that I don't think you got to address, but we had both A and C violations here. Yes. And they calculated the A. They didn't calculate the C violations, which is what the district court eventually found. So it's all well and good that they knew a year ago that the C violations gave you a different grade. But I wonder whether that changes when you have A and C violations and it becomes a little more confusing, at least for the defendant, as to what they're doing. Yes, Your Honor. And I think, again, that that is exactly what happened here. We spent two days going forward on these A grade violations. That was the main argument that the government presented. I thought there was a B violation that was in the earlier time. So it started out B and C and it wound up only C because the objection to the B was sustained. In this proceeding itself? No, in the one before. And, again, that happened, I believe, over a year ago. So, again, I think the record needs to be clear in this revocation hearing itself that if the court is only revoking based on C grade violations, that that guideline range be applied. And here you have the confusion between the A and the C, would be your argument. Yes. If the court has nothing further, thank you very much. Thank you.  Yes, Your Honor. May it please the court, Jonathan Cloud for the United States. The appellant Shaw's argument that hearsay was impermissibly relied upon for purposes of revocation at the revocation hearing is simply a mischaracterization of the record. The record is clear that Judge Sippel considered the complaint of hearsay only for sentencing purposes and not for revocation purposes. Well, now, wait. If he said that, give me a cite to a transcript page. Well, Your Honor, the judge, Judge Sippel, announces the sentence and the basis for his sentence at pages 86 and 87 of the transcript. But I think as a matter of logic, the district court obviously did not consider... Yeah, well, you're not... You know, you make categorical assertions, both of you, and then you say, well, this is a matter of logic because the district court wasn't asked to clarify and there's ambiguity in most pronouncements. Your Honor, I think it's important to... So you helped lead them into this supposed error. Well, Your Honor, I don't think that's the case because I don't think there is any error. I would start with pointing to the fact that there were, as Your Honor noted, a number of grade C violations that the district court did revoke on. Those concerned Shaw's testing positive for controlled substances, failure to attend drug testing... Did any of those grade C's mandate revocation? I don't believe so in this instance, Your Honor. So there is a little bit of a gap there, isn't there? You could find a number of grade C violations and decide not to revoke. So there's sort of a wedge in there between finding a violation then deciding to revoke and then sentencing. Perhaps in this case, Your Honor, but the point is that Judge Zippel did not consider the hearsay for purposes of revoking because the judge was clear that he did not revoke on the basis of the laws violation, the grade A violation. And the complaint of hearsay only related to the laws violation, the grade A violation, that the district court did not find. But I still think that there's something different between the assault, which was the charged grade A violation, right, and then this text message about a gun. So I'm not sure. I mean, it may be ultimately that Judge Zippel did what you're saying, but I'm not sure that I can come to that conclusion based on your steps there. Well, the firearm, the report that Shaw possessed a firearm was included in the petition as part of the grade A violation, so I will say that. And it was not included anywhere in the alleged C violations. Those alleged C violations concerned, as I was reciting before, the failure to submit to drug testing, positive drug tests, failure to attend a cognitive behavioral therapy session, and failure to follow the instructions of the probation officer. None of those allegations, none of those violations had anything to do with the firearm evidence that the court considered. Did a probation officer, is my recollection right, testify to all that? Is that how that was established at the sentencing hearing? That's correct, Your Honor. The probation officer testified to, well, two things actually, Your Honor. The probation officer testified to statements that were made by victim JD consistent with what the victim had reported to the St. Louis Metropolitan Police Detective and that was captured on police officer body cams, that Shaw had assaulted her on March 7th, 2023. During that assault, he had broken her phone, and during these events, he also stole a firearm belonging to her sister, the victim's sister. There were also text messages that were admitted that were covered from Shaw's phone that were consistent with that and alluded to the sender advising Shaw that the gun that was in his possession that belonged to her sister, to my sister, had been stolen and to warning him to not get caught with it because it had in fact been stolen. Because the district court did not consider the complaint of hearsay, the firearm evidence, for purposes of revocation, this court in Busey was clear that there is no due process right to confrontation at the sentencing phase of a revocation hearing. The Coleman-Bell line of cases only applies... That's not an issue that's been agreed to by everyone. You don't have to say it again. I think that's right, Your Honor. I heard it this morning. Given that counsel appears to concede that if, as is clear from the record, the district court only considered this hearsay for purposes of sentencing, then I think that argument is disposable. What's the standard review of that? It's clear from the record. If he didn't say, I am only using this for sentencing, if he never said that and no lawyer raised the question, what's our standard review of whether that was... How do we infer whether he did or didn't? Well, Your Honor, because... Give me a case where that's come up. I'm not aware of a case where that's come up, Your Honor. Because the firearm evidence did not go to any of the violations that the court considered, though, it necessarily was not relevant to his revocation of termination. But the court was permitted to consider it for purposes of sentencing, and as it sounds, as appellant has conceded, it was proper for him to do so. So I don't believe... So you're arguing that any error is harmless because it's obvious he would have revoked? Well, that is certainly the case, too. Even if there were some... I think that's a fair inference, but I don't think we can make it. Well, I think you can, Your Honor. Even if this court were to find there were some error in considering the hearsay for purposes of sentencing, which I don't think there is, the court was clear in announcing the sentence, the reason for its sentence, and that was because, in the court's own words, it had concluded that Shaw was not amenable to supervision, that Shaw had been given multiple opportunities, been provided multiple resources by the probation office, and never... It didn't take advantage. Have you got a case where any circuit court has held that, well, yes, there was something that was admissible only for sentencing, and it's not clear it wasn't used for revocation, but it's harmless error because it's crystal clear that it would have been revoked in any event? I believe Trung... The case is cited in our brief, Your Honor. Trung Dang, for instance, is an example of that, where the court found, one, that there was no error to begin with, but even if there were error, it would have been harmless because the court was clear, I think in the court's words, was firm that the sentence it imposed was an appropriate one based on the sentencing... No, that sentence imposed the revocation itself. I'm not sure I understand your question, Your Honor. Well, if Judge Kelly is right, none of these grade Cs mandated revocation. I believe that's... because there was evidence introduced in support of a grade A violation that the court didn't find, but... Your Honor, I think the issues are distinct because, again, the district court did hear considerable evidence related to the grade C violations. Those grade C... I want to know what our standard review is. Is it error not preserved? Is it plain error? Is it abuse of discretion? Well, typically, Your Honor... That's what matters a lot. You know, you're still back in the district court with this stuff. If this were in the Bell-Coleman line of cases, the standard review would be de novo, but because I think that line of cases doesn't apply and there was no objection, then I think plain error may be the correct standard. Well, the... Counsel, could I... If that happens, what... Oh, I meant... If... I meant to ask that for rebuttal. If we remand, would you consider the district court free to revisit the grade A issue? Whether or not to revoke on the grade A violations, Your Honor? Right. I don't believe so, Your Honor, and I don't think this court need to go so far. Well, the only issue... Because if we remand, I guess it's going to have to be for more evidence or maybe she'll insist that we remand on the present record. I suspect she might, Your Honor, but I believe the appellant is only challenging the sentence here. Well, if we remand, why can't the government find these witnesses and bring them in and have a new sentencing hearing? And if you do that, why isn't the grade A violation question open? Well, Your Honor, I believe the appellant is only challenging the sentence here, so if this court were to reverse, I think the sentence would be the only issue. And I'm not asking the court to reopen that. The remand would be for resentencing, right? Yes, Your Honor. And at this point, so it would be on the record. And the case law is inconsistent. In some cases, we limit it to the record. In most cases, we don't. I think in this case, it would be limited to the record, Your Honor. With the time I have remaining, though, I do want to make sure I address the guidelines question as well. Yeah, and I'm just going to direct you, because this is the issue I'm really concerned about. You have no calculation at all in this proceeding. You have no calculation. You have the district court going to the statutory maximum, but not giving a statement that the statutory maximum was the baseline. And I am very concerned, mostly because of Melina Martinez and Rosales Morales, that we would probably, even though those are miscalculation cases, that we have to remand for a new sentencing. I don't believe Morales requires you to remand, Your Honor. And I see my time's expired, if I could respond. Sure. Your Honor is right. Those are miscalculation cases. Those are factually distinguishable from what we have here, where, at most, the record is ambiguous as to what the court believed the guidelines calculation was. Now, to be clear, there's plenty of evidence in the record to show, as I think as Judge Loken pointed out in his addressing questions to opposing counsel, that there was every reason to believe that Judge Sippel was not laboring under some misunderstanding as to what the guidelines range was here, and that the 24-month sentence was not the result of some error in his guidelines calculation, but rather because he believed that, based on the record... Here's the problem. We don't have the... The PSR doesn't calculate it. He didn't calculate it. And I wonder what's worse, whether a non-calculation or a miscalculation is actually worse. Now, maybe we can presume that Judge Sippel knows it, but I can... I mean, not every judge. A new judge, would we make the same ruling for a new judge? I think Trung Dong is on point, Your Honor. There, the district court also did not state the applicable guidelines range, which was, in fact, the same 8 to 14 months. But this court found no error when the district court, despite failing to do so, imposed a 60-month sentence. And it pointed to the fact that the district court was aware of the grade of the violation and the criminal history score of the defendant. What year was that case? That was in 2018, which was also after the Supreme Court cases that Your Honor is referring to, which I think is instructive. Because the concern I have is on Molina-Martinez. It says expressly that you need no other evidence other than the miscalculation of the guidelines to prove that one's substantial effect... or substantial rights are affected. And I wonder if the same thing is true here. I don't think so, Your Honor. And Molina-Martinez also makes clear that just because in most cases that substantial rights are affected by an error in calculating the guidelines range, that's not to say that in every case there's going to be a substantial effect on the opponent's rights. And in particular, it notes cases where the judge makes clear that irrespective of the guidelines range, it believed the sentence was appropriate, a substantial effect on rights has not been shown. And that's the case here at the District Court. How would he... just one last question. How would the defendant here have shown, other than the non-calculation of the guidelines, that it affected substantial rights? We have an outside the guidelines range. I can't... I think that's what's underlying Molina-Martinez, if you read between the lines, is how do you prove it? Do you need the judge to affirmatively make a misstatement or is it enough to be able to point, hey, my sentence could have been lower because he went to the statutory max? Well, and that's why I think Molina-Martinez as a miscalculation case is distinguishable from here. Because in Molina-Martinez, the District Court stated a guidelines range that no party objected to, but was in fact incorrect. What would it have to... if it had to have been here, I want to answer this question. What would the District Court have to have set for it to affect substantial rights? Like, what would have been enough of a statement? I'm just trying to figure out how you prove it. I think the District Court would have had to have improperly calculated the guidelines for Molina-Martinez. So non-calculation is never reversible error under a plain error standard? I don't know if I go so far, but I think based on these facts, Your Honor, given that the District Court... there's plenty of evidence in the record that the District Court was aware of the two variables that go into calculating a revocation sentence. And also the fact that, you know, relying on cases like Chung Dang that the District Court was firm on the sentence that it was going to oppose based on the fact that this was the second revocation, his history on that prior term of supervised release, the recency of that prior revocation, his criminal history, all things that the District Court cited. It was clear that the District Court felt that a sentence at the top end, at the statutory maximum sentence with no further supervision was appropriate for Shaw because, in the Court's own words, he was not amenable to supervision. So I think, again, Chung Dang and cases like that show that even if there was some error in calculating the guidelines, there's no effect on substantial rights because the District Court imposed the sentence that it believed and was, in fact, appropriate based on the relevant sentencing factors. And by this point, I'm very over my time, so if there are no further questions, I will ask that the Court confirm the sentence below. Thank you. Is there a rebuttal time? I would like to ask what's your requested remedy? Yes, Your Honor. We do believe that because of the line of cases in Coleman that we are asking for reversal, for reconsideration on the record as it is, that the Court can't further add to this matter. But you want resentencing? Yes, Your Honor. So the Grade A violation issue then is open again? I think for sentencing purposes only. Well, you want a new revocation, right? I mean, two. Yeah, so. Your Honor. Is it resentencing? Is there a revocation? Is that open then? I think so, but I think that the Government then cannot expand the record on this matter because of the Coleman line of cases because they did not request a continuance in this case and that there was no good cause shown that these witnesses were unavailable. So because of those line of cases that this was this unreliable hearsay, they now don't get a second bite at that to try to bring in those witnesses. I just have one question as well. How does this change if we don't agree with you on the hearsay or think it's harmless? Right. Well, we do think that there might have been a reversible error on the non-calculation of the guidelines range. Does that change what you'd be asking for? Or is the remedy the same in both? I think the remedy is the same in both, but again, I think that as the Court was asking the Government in this case, that because there was no guideline calculation here and the Court's question about how would we prove that, I think, again, the record here shows that because the statutory maximum sentence was then imposed without any calculation occurring, that that does show that this was obviously not harmless error and that this was substantially affecting Mr. Shaw's rights. If I could follow up. And I apologize if this question is repetitive. So you are saying that the District Court relied on an improper factor to revoke? Yes. So wouldn't you be asking then for a new revocation hearing? Yes, Your Honor. My point is that I don't believe the Government can expand the record on the Grade A violation because of Coleman, because they did not make the showing that there was good cause and that this was reliable. So because Mr. Shaw's confrontation rights were violated, I don't believe that they now get to go back and bring in that witness. But you're just saying that this leaves open the idea that perhaps the District Court could say, well, I'm finding these Grade C violations but I'm not going to revoke your term of supervised release. I'm going to modify your conditions or send you to the half-house, something like that. Absolutely. Because as the Court pointed out, a C-Grade violation alone does not mandate revocation. Sorry about this. One follow-up on Judge Kelly's question, which is, does it make a difference that we're in plain error? So it would be one thing not to expand the record if there was an objection. But I think that's tough on the government because the government said, okay, it came in without objection so I don't need to present anymore. And now we're going to reverse and say, okay, now you can't present anything new. That seems to me to be a little unfair to the government. I think that again here that if we were going in for just resentencing, that again, I think that that is a different analysis. That the government then could bring in other things that would be relevant in a sentencing hearing and that the court would follow the proper procedural safeguards and again, that our position is that the sentence then would be different. Thank you, Your Honors. Thank you. The case has been fully briefed and argued and we will take it under advisement.